# Illinois Official Reports

## Appellate Court

---

### *People v. Madison*, 2014 IL App (1st) 131950

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARMELITA MADISON, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-1950 |
| Filed<br>Rehearing denied | August 27, 2014<br>September 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant was initially found unfit to stand trial in a case charging her with misdemeanor battery and she filed a notice of appeal but the State argued that her appeal was moot based on the finding made after her notice of appeal was filed that she was fit to stand trial with medication, the appellate court dismissed the appeal, since defendant failed to show that the collateral consequences exception to the mootness doctrine applied. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-MC1-197585; the Hon. Michael B. McHale, Judge, presiding. |
| Judgment | Appeal dismissed. |

Counsel on
Appeal

Daniel T. Coyne, of Law Offices of Chicago-Kent College of Law, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Mary P. Needham and Jocelyn M. Schieve, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Mason concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant-appellant, Carmelita Madison, appeals from an order entered by the circuit court of Cook County finding her unfit to stand trial. On appeal, Madison contends that the State failed to meet its burden of proof to demonstrate her lack of fitness, and she argues a number of grounds for reversing the finding of unfitness. After Madison's notice of appeal was filed in this case, she was found fit to stand trial with medication. The State does not respond to Madison's arguments on the merits and instead contends that her appeal is moot. The State maintains that because Madison has now been found fit to stand trial, this court is unable to afford her any relief and the appeal should be dismissed. We agree that Madison's appeal is moot and dismiss this appeal.

¶ 2                                   BACKGROUND

¶ 3 Madison was charged with one count of misdemeanor battery after she allegedly struck the victim in the face on April 19, 2012. On June 29, 2012, the trial court ordered a behavioral clinical examination for Madison. On September 11, 2012, Dr. Erick Neu, a licensed clinical psychologist with Cook County Forensic Clinical Services, evaluated Madison and concluded that she was unfit to stand trial and that she "suffered from a psychotic disorder and her symptoms were of sufficient severity to significantly impede her ability to assist in her defense."

¶ 4 On January 31, 2013, the trial court ordered a second examination to be conducted by an evaluator other than Dr. Neu, because more than 45 days had passed since Dr. Neu's report. See 725 ILCS 5/104-16(a) (West 2012).

¶ 5 The evaluation was assigned to Dr. Christofer Cooper, who first met with Madison on February 28, 2013. The evaluation lasted only 20 minutes because Madison declined to participate. After answering some initial questions, Madison refused to continue the evaluation because she claimed that Dr. Cooper did not have her academic transcripts dating back to college and that, without them, Dr. Cooper would not be able to "understand her language or

- 2 -

accurately diagnose her." Shortly after her initial meeting with Dr. Cooper, Madison sent a letter to Dr. Cooper's office. The lengthy letter expressed Madison's complaints about the initial evaluation, contained various comments about her Judeo-Christian beliefs, and asked that Dr. Cooper read all of her academic transcripts. In her letter, Madison expressed her belief that Dr. Cooper must "black out all theological, philosophical references" in her file because Madison believed that Judge Gloria Chevere already "found me guilty based upon her prejudice."

¶ 6    Madison failed to appear for her second appointment with Dr. Cooper scheduled for March 25, 2013. Before her third appointment scheduled for April 16, 2013, Dr. Cooper received a CD-ROM containing Madison's various academic transcripts, which he reviewed in preparation for the April 16 evaluation. But when Dr. Cooper met with Madison on April 16, 2013, the evaluation only lasted about 10 minutes. Dr. Cooper told Madison that he had received and reviewed her academic transcripts, but she demanded that Dr. Cooper take out her records and review them with her. Dr. Cooper told Madison that he was seeking information directly from her, not from her records, and that he wanted to ask her questions. Madison then refused to answer any more questions or to participate in the evaluation. Dr. Cooper was unable to ask Madison if she understood the function of a trial or whether she would be able to rationally assist her attorney in preparing her defense.

¶ 7    After the April 16, 2013 evaluation, Madison sent Dr. Cooper a second letter. In that letter, Madison stated that she "boldly, angrily and self-righteously rendered a statement that I truly presented to you as having psychiatric mental illness." Madison also wrote, "I dismissed my adult presence before you and proceeded as if I was nothing. Is this not so? You, sir, are not who you think you are." Madison also wrote the victim an 18-page letter stating that, "[the victim], the Pope and the President were involved in sex trafficking of Black children in her neighborhood." Based on everything that Dr. Cooper reviewed, including Dr. Neu's report, Madison's letters, the police report, and the misdemeanor complaint, as well as his two attempted evaluations of Madison, Dr. Cooper stated that his "clinical concerns are that [Madison] suffers from a mental illness, specifically a psychotic or delusional mental illness and that this presents possible concerns regarding her fitness to stand trial."

¶ 8    On May 9, 2013, the trial court conducted a fitness hearing. Dr. Cooper testified that he was unable to proffer a clinical opinion as to whether or not Madison was fit to stand trial, because she had refused to participate in the evaluation. Dr. Cooper expressed "clinical concerns" regarding Madison's fitness for trial based on all of the information available to him. After hearing Dr. Cooper's testimony and considering the parties' arguments, the trial court found Madison unfit to stand trial. The trial court disagreed with defense counsel's argument that there was no evidence of unfitness, noting Dr. Cooper's clinical concerns regarding an underlying paranoid delusional ideation. The trial court also stated that based on the Code of Criminal Procedure of 1963 (see 725 ILCS 5/104-14(c) (West 2012)), the court was allowed to consider Madison's continued refusal to cooperate with any of the Forensic Clinical Services' evaluations. The court ordered Madison committed to the Department of Human Services for inpatient treatment. On May 10, 2013, defense counsel filed a motion to reconsider the finding of unfitness and the ruling committing Madison to inpatient treatment. The trial court denied the motion to reconsider the fitness finding, but granted the motion to allow Madison to undergo outpatient treatment.

¶ 9    Several months later, Madison was again evaluated by Dr. Neu. Although Madison reported that she had not taken her prescribed psychotropic medication for several weeks, Dr. Neu nevertheless concluded that she was fit to stand trial in that she displayed an understanding of the role of various courtroom personnel, understood the charges against her and appeared able to cooperate with defense counsel. At a later restoration hearing, the parties stipulated to Dr. Neu's findings and the trial court found Madison fit to stand trial.

¶ 10                                                              ANALYSIS

¶ 11    In this appeal, Madison challenges the trial court's finding that she was not fit to stand trial. Because Madison was found fit to stand trial during the pendency of this appeal, the issue of her fitness is now moot. Nevertheless, Madison argues that the issue presented by her appeal falls within an exception to the mootness doctrine that would allow for appellate review of the trial court's finding of unfitness. Whether this appeal is moot presents a question of law. See *In re Alfred H.H.*, 233 Ill. 2d 345, 350 (2009).

¶ 12    Generally, a party resisting a finding of mootness has the burden to show an exception to the mootness doctrine on at least one of three grounds: that the case falls into the category of one that is "capable of repetition but evading review"; that the case involves an issue of great public importance; or that there are collateral consequences of the order appealed from such that it "could return to plague the [defendant] in some future proceedings or could affect other aspects of the [defendant's] life." (Internal quotation marks omitted.) *People v. Holt*, 2013 IL App (2d) 120476, ¶ 4, *appeal allowed*, No. 116989 (Ill. Jan. 29, 2014). Madison relies on the last exception in this case, contending that even if this appeal is moot, review is nonetheless appropriate under the collateral consequences exception to the mootness doctrine. Madison contends that the finding that she was unfit to stand trial has collateral consequences in that (i) it could prevent her from obtaining a firearm owners' identification (FOID) card or obtaining licensure in a number of professions; (ii) it could be used in other proceedings to undermine her credibility; and (iii) the medication that has restored her to fitness imposes ongoing financial and physical burdens.

¶ 13    The collateral consequences doctrine allows for appellate review after a court order has ceased to be effective if the party seeking review has suffered, or is threatened with, an actual injury that is likely to be redressed by a favorable judicial decision. *In re Alfred H.H.*, 233 Ill. 2d 345, 361 (2009). While our supreme court has recognized that reversal of a mental health admission or treatment order could provide a "host of potential legal benefits," it concluded that application of the collateral consequences exception must be decided on a case-by-case basis and that the finding of collateral consequences has to be tailored to the facts of each case. *Id.* at 362.

¶ 14    The supreme court further clarified the mootness doctrine and its three exceptions in *In re Rita P.*, 2014 IL 115798. In *Rita P.*, respondent's psychiatrist filed a petition seeking a court order allowing the involuntary administration of psychotropic medication. *Rita P.*, 2014 IL 115798, ¶¶ 1-4. The circuit court granted the involuntary treatment order and set a treatment period of 90 days. *Id.* ¶ 23. Respondent filed a notice of appeal, seeking reversal of the trial court's treatment order. *Id.* ¶ 24. During the pendency of the appeal, the treatment order expired. *Id.* This court reviewed the case under the collateral consequences exception to the mootness doctrine and reversed the trial court's treatment order. *Id.* ¶ 25.

¶ 15 The State requested the supreme court to vacate the appellate court's judgment, arguing that "no *per se* exception to the mootness doctrine applies to first involuntary treatment orders, or mental health cases generally, and that the appellate court should have dismissed respondent's appeal as moot." *Id.* ¶ 30. The supreme court agreed and held that "a reviewing court must consider all the relevant facts and legal issues raised in the appeal before deciding whether the exception applies." *Id.* ¶ 34. The court concluded that application of the collateral consequences exception cannot rest upon the lone fact that no prior involuntary admission or treatment order was entered, or upon a vague, unsupported statement that collateral consequences might plague the respondent in the future. *Id.* Rather, the collateral consequences must be identifiable and stem solely from the present adjudication. *Id.* The supreme court explained:

> "Although *amicus curiae* argues that a first involuntary commitment or treatment order should always satisfy the collateral consequences exception, we adhere to our decision in *Alfred H.H.* and decline to adopt a blanket rule of appealability in such cases. Appellate court opinions that hold otherwise, including the opinion below, are overruled." *Id.*

¶ 16 As a threshold matter, all of Madison's arguments regarding collateral consequences overlook the fact that before the hearing at which the trial court found her unfit to stand trial, she had already been determined to be unfit by Dr. Neu. Madison never sought to contest Dr. Neu's determination that she was unfit to stand trial and because that finding will remain regardless of the outcome of this appeal, it is unclear how resolution of the issues Madison raises could alleviate any of the claimed collateral consequences she identifies. Nevertheless, we will address whether the collateral consequences exception applies here.

¶ 17 Madison's first argument that she will be unable to apply for a FOID card or pursue various professional licenses is insufficient to bring this case within the collateral consequences exception to the mootness doctrine. Madison is a 66-year-old female who has been receiving social security disability benefits since 2002; her disability benefits converted into retirement benefits once she turned 66. If a finding of unfitness will always hinder a party's ability to obtain a FOID card or pursue certain professions, then as a matter of law, such orders would always have collateral consequences and, therefore, would never be moot. But such reasoning runs counter to the holdings of *In re Alfred H.H* and *In re Rita P*. We note that *People v. Holt*, 2013 IL App (2d) 120476, cited by Madison, was decided before *In re Rita P*. Its reasoning–that the potential inability to obtain a FOID card is a collateral consequence sufficient to save an appeal from mootness–we believe, runs afoul of *In re Rita P*. because there is no indication that Madison is interested in owning a firearm or pursuing any licensed profession, and predicating an exception to the mootness doctrine on such collateral consequences is purely speculative.

¶ 18 Madison's second argument that a finding of unfitness may affect the assessment of her credibility in other proceedings is likewise insufficient to bring this case within the collateral consequences exception because it, too, is purely speculative. Madison identifies no other proceedings in which her credibility is at issue and the possibility of her involvement in such proceedings in the future is, like her first argument, purely speculative.

¶ 19 Madison's third argument focuses on the financial and physical burdens imposed by the medication that has restored her to fitness. But as the State points out, the order Madison appealed from does not require her to take medication; it only referred her for treatment.

Further, the record reflects that in connection with her evaluation before the restoration hearing at which Madison was found fit to stand trial, she reported to Dr. Neu that she had not been taking her medications for several weeks. Notwithstanding the cessation of her medication, Dr. Neu found Madison fit to stand trial. Thus, as far as the record shows, Madison, by her own voluntary act, has alleviated any arguable collateral consequences even secondarily related to the trial court's finding of unfitness.

## CONCLUSION

Because Madison has been found fit to stand trial and has failed to demonstrate that the collateral consequences exception to the mootness doctrine applies, we find this appeal moot.

Appeal dismissed.